# Effect of the Patriot Act on Disclosure to the President and Other Federal Officials of Grand Jury and Title III Information Relating to National Security and Foreign Affairs

The Patriot Act amendments to the confidentiality provisions in Rule 6(e) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2517 (part of Title III of the Omnibus Crime Control and Safe Streets Act of 1968) did not change this Office's prior opinions that these provisions are subject to an implied exception where disclosure of information is necessary to permit the President to discharge his constitutional responsibilities for national security under Article II.

The decision to disclose such information to other Executive Branch officials is a matter for the President himself to determine. He may delegate that authority to others—including by an oral direction—but officials such as the Attorney General may not exercise an inherent constitutional power of the President to disclose such information to others without some direction from the President.

The Patriot Act amended Rule 6(e) and Title III to provide that matters involving foreign intelligence or counterintelligence or foreign intelligence information may be disclosed by any attorney for the government (and in the case of Title III, also by an investigative or law enforcement officer) to certain federal officials in order to assist those officials in carrying out their duties. Although the new provision in Rule 6(e) requires that any such disclosures be reported to the district court responsible for supervising the grand jury, disclosures made to the President fall outside the scope of the reporting requirement contained in that amendment, as do related subsequent disclosures made to other officials on the President's behalf.

July 22, 2002

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

I. Summary .................................................................................................79

II. Prior Opinions of the Office of Legal Counsel .................................................80
    A. Disclosure of Grand Jury Material................................................................80
    B. Disclosure of Title III Information................................................................86

III. Patriot Act Amendments to Rule 6(e) and Section 2517 ..................................88

IV. Impact of the Patriot Act Provisions on the Ability to Disclose Information Under Rule 6(e) and Title III ...........................................................90

V. Discussion of Specific Questions....................................................................92
    A. Who is Authorized to Make the Decision to Disclose Information to the Appropriate Federal Officials? .............................................................92
        1. Statutory Disclosures.........................................................................92
        2. Disclosure Pursuant to Inherent Constitutional Authority...................92

    B. May Information Be Shared with the President, Attorneys in the
       White House Counsel's Office, the President's Chief of Staff, the
       National Security Advisor and Officials Within the Department of
       Defense, and Are There Any Differences in the Standards That
       Apply for Disclosure to these Different Officials? .................................93
       1. Statutory Exceptions..............................................................93
       2. Disclosure Pursuant to Inherent Constitutional Authority...................94
    C. May Grand Jury and Title III Information Be Shared With the
       President For Purposes of Making Decisions Regarding Bringing
       Charges in a Military Tribunal?....................................................96
    D. Does the Reporting Requirement Contained in Rule 6(e)(3)(C)(iii)
       Apply to the President?..............................................................96
    E. Does the Reporting Requirement Contained in Rule 6(e)(3)(C)(iii)
       Apply to Secondary Recipients of Information Disclosed Pursuant to
       Rule 6(e)(3)(C)(i)(V)? ..............................................................101
VI. Conclusion.........................................................................103

Your Office has asked for our views concerning how the enactment of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. No. 107-56, § 203, 115 Stat. 272, 278-81 ("Patriot Act") has affected prior opinions of this Office regarding disclosure to the President and other federal officials of grand jury and Title III information relating to national security and foreign affairs. We discuss below our prior opinions in this area and the changes to the law brought about by the Patriot Act amendments. We then address specific questions raised by your Office.

## I. Summary

Prior to enactment of the Patriot Act, this Office had concluded that the secrecy provisions of Rule 6(e) (relating to grand juries) and Title III (relating to wire taps) provided no explicit exception permitting the disclosure of information to the President or other officials for purposes of national security or foreign affairs. We had concluded, however, that these confidentiality provisions were subject to an implied exception where disclosure of information was necessary to permit the President to discharge his constitutional responsibilities under Article II. Our conclusion that the President has inherent constitutional authority to require disclosure of information that is necessary for him to fulfill his constitutional responsibilities remains valid. We conclude that the need for the President to have access to a limited class of information necessary for performance of his constitutional duties means not only that the President may direct the disclosure of such

information, but also that senior officials, such as the Attorney General, who have such information have a duty to disclose it to the President when withholding it would impair the President's ability to discharge his constitutional responsibilities. Thus, the Attorney General may make a determination that Rule 6(e) or Title III information in his possession should be disclosed to the President.

The decision to disclose such information to other Executive Branch officials, however, is a matter for the President himself to determine. He may delegate that authority to others—including by an oral direction—but officials such as the Attorney General may not exercise an inherent constitutional power of the President to disclose such information to others without some direction from the President.

In addition, the Patriot Act recently amended Rule 6(e) and Title III specifically to provide that matters involving foreign intelligence or counterintelligence or foreign intelligence information may be disclosed by any attorney for the government (and in the case of Title III, also by an investigative or law enforcement officer) to certain federal officials in order to assist those officials in carrying out their duties. Federal officials who are included within these provisions may include, for example, the President, attorneys within the White House Counsel's Office, the President's Chief of Staff, the National Security Advisor, and officials within the Central Intelligence Agency and the Department of Defense. Moreover, the purpose of the disclosure may include assisting such officials, including the President, in making decisions regarding bringing charges in a military commission in connection with crimes committed against the United States and its citizens. Although the new provision in Rule 6(e) permitting disclosure also requires that any disclosures be reported to the district court responsible for supervising the grand jury, we conclude that disclosures made to the President fall outside the scope of the reporting requirement contained in that amendment, as do related subsequent disclosures made to other officials on the President's behalf.

## II. Prior Opinions of the Office of Legal Counsel

### A. Disclosure of Grand Jury Material

Rule 6(e)(2) of the Federal Rules of Criminal Procedure provides that:

> A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

Subsection (e)(3) of Rule 6 provides various exceptions to this general rule of secrecy. For example, subsection (e)(3)(A) provides that disclosure may be made (i) to "an attorney for the government for use in the performance of such attorney's duty," and (ii) to such other government personnel "as are deemed necessary by an attorney for the government . . . in the performance of such attorney's duty to enforce federal criminal law." In 1993 this Office examined the applicability of such exceptions to the disclosure of grand jury material to the President and members of the National Security Council ("NSC"). We expressed the general view that "[w]e do not believe that any of the 6(e) exceptions would apply to disclosures made to the President or NSC officials for general policymaking purposes, as opposed to obtaining the assistance of those officials for law enforcement purposes." *Disclosure of Grand Jury Matters to the President and Other Officials*, 17 Op. O.L.C. 59, 59 (1993) ("*Grand Jury Matters*"). We viewed "law enforcement purposes" as relating generally to disclosures made for the purpose of assisting the Attorney General or other attorney for the government with the enforcement of federal criminal law. *Id*. at 59, 61. Although we distinguished disclosures made to assist an attorney in the enforcement of the criminal law from those made for mere purposes of general policymaking, *id*. at 61-62, we approved, for example, the concept of a disclosure made to the President and National Security Council members, such as the Secretary of State, for purposes of discussions that would facilitate the Attorney General's direction and supervision of the criminal investigation into matters that have an unusual national significance, such as the 1993 terrorist attack on the World Trade Center. *Id*. at 61. We also noted that Congress intended federal prosecutors "to have broad leeway in deciding what government personnel should have access to grand jury materials for purposes of facilitating enforcement functions." *Id*. at 62.

Moreover, despite our view that Rule 6(e)(3) contained no statutory exception to the secrecy rule for disclosures of grand jury information to the President or other intelligence officials for purposes other than assisting an attorney for the government with that attorney's criminal law enforcement duties, we also explained that:

> As the repository of all executive power in the national government, the President is charged with the duty to "take Care that the Laws be faithfully executed." Accordingly, there may be circumstances in which his constitutional responsibilities entitle the President to obtain disclosure of grand jury information that has already been made available to the Attorney General, even where that disclosure might not be specifically authorized by one of the exceptions under Rule 6(e).

*Id*. at 65 (quoting U.S. Const. art. II, §§ 1, 3). We cited as a "prime example of such circumstances," "a grand jury investigation of major international terrorist activity in the United States, involving a threat to domestic peace and national security." *Id*. at 67. We also referred to the President's removal power justifying the President's access to grand jury information in a case where the integrity or loyalty of a presidential appointee holding an important and sensitive post was implicated by the grand jury investigation. *Id*. We articulated the threshold inquiry as being whether "the President's ultimate responsibility to supervise the executive branch, and in particular his duty to 'take Care that the Laws be faithfully executed,' U.S. Const. art. II, § 3," *id*. at 60, is implicated. We cautioned, however, that "[i]n the absence of judicial precedent on this point . . . any disclosure of grand jury matter to the President on this basis should be cautiously undertaken and reserved for matters of clear executive prerogative in areas where the Rule 6(e)(3)(A)(ii) exception could not be used." *Id*. at 68.

Four years later, in 1997, we addressed more specifically various questions concerning the permissibility of disclosing grand jury information to agencies in the intelligence community for certain official purposes. *See Disclosure of Grand Jury Material to the Intelligence Community*, 21 Op. O.L.C. 159 (1997) ("*Grand Jury Material*"). Based on the definition contained in 50 U.S.C. § 401a(4) (as amended by Patriot Act),[1] we defined the term "intelligence community" ("IC") to include the Central Intelligence Agency, the National Security Agency, the Defense Intelligence Agency, and the intelligence elements of the Armed Services, the Federal Bureau of Investigation, and the Department of Treasury. *Grand Jury Material*, 21 Op. O.L.C. at 159 n.1.

As a preliminary matter, we concluded that grand jury information could be disclosed, pursuant to Rule 6(e)(3)(A)(ii), to intelligence community officials in order to permit those officials to assist prosecutors in enforcing federal criminal law. *Id*. at 161. We noted, however, that the official receiving such information could use that information only for purposes of assisting federal criminal law enforcement, and not for foreign intelligence purposes. *Id*. at 169-70. At the same time, we stressed that the phrase "assist . . . in the performance of such attorney's duty to enforce federal criminal law" could be construed to cover a wide range of matters, such as identifying possible violators of far-reaching anti-drug and anti-terrorism laws. *Id*. at 170 (alteration in original) (quoting Rule 6(e)(3)(B)). We also noted that "as long as the IC was lawfully using the 6(e) material to assist the Government attorneys, and learn[s] . . . the collateral information within the scope of its authorized support operations, the Rule does not require the IC to refrain from using derivative information that it learns incidentally in the course of

---

[1] 50 U.S.C. § 401a(4)(J) (1994) also includes "such other elements of any other department or agency as may be designated by the President, or designated jointly by the Director of Central Intelligence and the head of the department or agency concerned."

providing such assistance." *Id*. Moreover, we explained that the scope of authorized assistance is determined by "(1) the scope of the requesting attorney's 'duty to enforce federal criminal law' and (2) the scope of the attorney's request for assistance." *Id*. at 171. For example, if government personnel are rendering assistance to the Attorney General under subsection (A)(ii), their assistance may extend to a broad criminal law enforcement program for which the Attorney General is responsible, such as a national or international drug interdiction or counter terrorism initiative. On the other hand, depending on the nature of the request by the attorney for the government, the assistance may also be limited to a single case or investigation, or even a single aspect of such a case or investigation, such as providing technical advice concerning a particular technology.

Finally, we addressed the question posed to us by the Acting Counsel for the Office of Intelligence Policy and Review concerning whether 6(e) material could be disclosed to intelligence community officers "where the information in question [is] urgently relevant to a matter of grave consequences for national security or foreign relations." *Id*. at 172. We stated:

> Where approved by the President, we believe such disclosure would be lawful, although we caution that the legal principles supporting this conclusion are not firmly-established in the case law concerning grand jury secrecy. Nonetheless, we believe such disclosure would rest upon the same fundamental constitutional principle that has been held to justify government action overriding individual rights or interests in other contexts *where the action is necessary to prevent serious damage to the national security or foreign policy of the United States*.

*Id*. (emphasis added). We went on to explain that it was our view that Rule 6(e) should not be construed "to limit the access of the President and his aides to information critical to the national security" since such information "would be crucial to the discharge of one of the President's core constitutional responsibilities." *Id*. We concluded that since there is no governmental interest more compelling than the security of the Nation, "the President has a powerful claim, under the Constitution, to receive the information in question here and to authorize its disclosure to the IC." *Id*. at 173. Although we recommended the adoption of procedures requiring consultation with, and approval by, high-ranking Department officials, we concluded that

> there are circumstances where grand jury information learned by an attorney for the government may be of such importance to national security or foreign affairs concerns that to withhold it from the President (or his Cabinet members and other key delegatees and agents,

acting on his behalf) would impair his ability to discharge his executive responsibilities under Article II of the Constitution,

*id*. at 174, and therefore that "Rule 6(e) should be read to be subject to such an implied exception." *Id*. We explained that, where justified by the circumstances,

> the attorney learning the information would be obliged to convey the information to appropriate superiors (e.g., the U.S. Attorney), who would report it to the Attorney General, who would in turn report it to the President. The President (or appropriate officials acting on his behalf, such as the Attorney General) would clearly be authorized to share such crucial information with his executive branch subordinates, including IC officials, to the extent necessary to discharge his constitutional responsibilities.

*Id*.

Therefore, prior to the Patriot Act amendments to Rule 6(e), it was our view that Rule 6(e) provided no explicit exception to grand jury secrecy for disclosure to the President or other officials of grand jury information relating to national security or foreign affairs, but that the general secrecy rule was subject to an implied exception where such disclosure was necessary to permit the President to discharge his executive responsibilities under Article II.[2] Although we did not assert that it was legally necessary for such disclosures to pass through the Attorney General to the President, we offered as a matter of policy that,

> in light of the extraordinary nature of this authority to disclose Rule 6(e) material, and to ensure careful consideration of the constitutional basis for any disclosure made outside the provisions of Rule 6(e), we recommend the adoption of procedures requiring consultation with, and approval by, the appropriate officials (e.g., the Attorney General or the Deputy Attorney General) preceding any such disclosure.

*Id*. at 175. It is important to note, however, that there is no indication in our prior opinions that, in the area of national security and foreign affairs, we believed that the initial assessment of whether disclosure to the President was justified could not be made by those officials in possession of the information.[3] To require a series of

---

[2] Although the opinion also discusses the "critical," "crucial," or "compelling" nature of the information, it seems clear that these concepts are included as elements of whether the information is necessary to the exercise of the President's responsibilities over foreign affairs and national defense. *See Grand Jury Material*, 21 Op. O.L.C. at 172-73.

[3] In a recent opinion addressing the process by which the President may obtain grand jury information relevant to the exercise of his pardon authority, we concluded that:

partial disclosures, hints and ambiguous suggestions to take place between the President and the person in possession of the information prior to full disclosure of such information to the President would seem to achieve little other than to complicate, confuse and unduly burden the entire decision-making process. We did caution, however, that "this constitutional authority should not be exercised as a matter of course, but rather only in extraordinary circumstances." *Id*. at 160. Moreover, while our opinion recognized that disclosure could be made to the President, *id*. at 174-75, and that subsequent or additional disclosures to other federal officials needed to be authorized by the President, *id*. at 174, the opinion suggested that the authority to share such information with other appropriate Executive Branch officials other than the President, including intelligence officials, could be exercised by officials, such as the Attorney General, acting on the President's behalf. *Id*. There is no requirement that such a delegation be reduced to writing. Given the inherent constitutional nature of such authority, however, we recommend that the authorization by the President of one or more subordinates to act on his behalf in making such disclosures to other appropriate Executive Branch officials be accomplished through, for example, a confidential and privileged memorandum from the President to his subordinate specifically delegating this particular type of authority, and not through a more general preexisting delegation. This delegation may be in the form of a standing order that applies to all decisions to disclose such information, rather than having to be made on a case-by-case basis.[4]

---

The President may . . . issu[e] a standing request for certain grand jury material, to the extent it exists, relating to particular issues that he deems relevant to his pardon decisions. That standing request may also provide that prosecutors are permitted to share such grand jury material with identified Department of Justice officials (such as the Attorney General or Deputy Attorney General, in consultation with the Pardon Attorney) for the purpose of having them make the preliminary determination whether the grand jury information is sufficiently relevant to the pardon decision to warrant it being provided to the President. Any such standing directive, however, should be carefully written to make clear that disclosures of grand jury material should not be routine, but rather should be made only when certain factors indicate the existence of material relevant to the President's decisionmaking process. These procedures will help insure that such disclosures fall within the category of material that the President has specified as being relevant to his decisionmaking process. Alternatively, disclosure might be authorized on a case-by-case basis as deemed appropriate by the President.

*Whether the President May Have Access to Grand Jury Material in the Course of Exercising His Authority to Grant Pardons*, 24 Op. O.L.C. 366, 372-73 (2000). In this matter, however, we had concluded that, "due to the intrinsically subjective nature of the President's pardon decision, it is difficult for anyone other than the President to assess the materiality of information to the exercise of his pardon authority," and therefore the decision to disclose the information had to originate with the President. *Id*. at 372.

[4] Under 3 U.S.C. §§ 301 and 302 (2000), the President has broad authority to delegate his powers. Section 302 extends the President's delegation authority to "any function vested in the President by

## B. Disclosure of Title III Information

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522 (2000) (as amended by Patriot Act), governs the subsequent use and disclosure of information obtained as a result of court-authorized electronic surveillance. In relevant part, section 2517(1) and (2) of title 18 provides that investigative or law enforcement officers who have lawfully obtained Title III information may disclose it to other investigative or law enforcement officers, or use it, to the extent the disclosure or use is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure or using the information.

In October 2000, we responded to a request regarding the extent to which law enforcement officials could share with the intelligence community information obtained through court-authorized electronic surveillance pursuant to Title III. *Title III Electronic Surveillance Material and the Intelligence Community*, 24 Op. O.L.C. 261 (2000). After reviewing Title III, in particular 18 U.S.C. § 2517, and section 104(a) of the National Security Act, we concluded that such information could be shared in limited situations,

> namely, (1) where law enforcement shares the information with the intelligence community to obtain assistance in preventing, investigating, or prosecuting a crime; and (2) where the information is of overriding importance to national security or foreign relations and where disclosure is necessary for the President to discharge his constitutional responsibilities over these matters.

*Id*. at 261. This analysis was based on the pre-Patriot Act language of section 2517, which permitted disclosure of court-authorized Title III information only from one investigative or law enforcement officer to another and limited the use of that information to uses appropriate to the proper performance of those officials' duties. *Id*. at 264. We concluded that, under Title III, any electronic surveillance or subsequent disclosure of Title III information is prohibited unless expressly permitted. *Id*. at 262-63 (citing cases), 272. Based on the language of the statute, we then concluded that the permissive disclosure and use provisions of section 2517 did not apply to disclosures by law enforcement officers to the intelligence community unless such disclosure constituted a "use" by the law enforcement officer that was "appropriate to the proper performance of the official duties" of that disclosing officer. *Id*. at 263 (internal quotation marks omitted). We explained, therefore, that a law enforcement officer could convey Title III infor-

---

law" so long as the "law does not affirmatively prohibit delegation of the performance of such function."

mation pursuant to section 2517(2) only so long as it was done "in order to acquire intelligence information relevant to preventing, investigating, or prosecuting a crime." *Id*. at 269.[5] In such a situation, we explained, the intelligence officer was then restricted in his or her subsequent use of that information. *Id*. at 269 n.12.

Despite concluding that Title III prohibits every disclosure that it does not explicitly authorize, *id*. at 262-63, 272, we concluded, consistent with our grand jury opinions, that

> in extraordinary circumstances electronic surveillance conducted pursuant to Title III may yield information of such importance to national security or foreign relations that the President's constitutional powers will permit disclosure of the information to the intelligence community notwithstanding the restrictions of Title III.

*Id*. at 273. Citing our 1993 and 1997 opinions concerning grand jury material, we explained that "the Constitution vests the President with responsibility over all matters within the executive branch that bear on national defense and foreign affairs, including, where necessary, the collection and dissemination of national security information." *Id*. We reiterated the principle that, when the President's authority concerning national security or foreign relations is in tension with a statutory rather than a constitutional rule, the statute cannot displace the President's constitutional authority and should be read to be subject to an implied exception in deference to such presidential powers. *Id*. at 273-74. Thus, we concluded that

> law enforcement officers who acquire information vital to national security or foreign relations would be obliged to convey it to the appropriate superiors (e.g., the United States Attorney), who would report it to the Attorney General or Deputy Attorney General, who would in turn report it to the President or his designee. The President (or appropriate officials acting on his behalf, such as the Attorney General) would be authorized to share such crucial information with his executive branch subordinates, including intelligence community officials, to the extent necessary to discharge his constitutional responsibilities.

*Id*. at 274. Thus, although recognizing that the disclosure needed to be made to the President or his designee, and that subsequent or additional disclosures to other

---

[5] We cited examples of such legitimate purposes, including obtaining intelligence information concerning the structure of a terrorist organization or specific individuals who are under investigation; obtaining voice identification; and obtaining information about extraterritorial components of a criminal investigation. *Id*. at 270.

federal officials needed to be authorized by the President, *id*., the 2000 opinion, like our 1997 opinion in the grand jury context, also suggests that the authority to share such information with other appropriate Executive Branch officials, including intelligence officials, could be exercised by officials, such as the Attorney General, acting on the President's behalf. *Id*. As with the disclosure of grand jury information, however, we recommend that, given the inherent constitutional nature of such authority, the authorization by the President of one or more subordinates to act on his behalf in this area be accomplished through an order specifically delegating this particular authority, as opposed to reliance on a more general preexisting delegation.

### III. Patriot Act Amendments to Rule 6(e) and Section 2517

The Patriot Act amended Rule 6(e)(3) and 18 U.S.C. § 2517 specifically to provide that matters involving foreign intelligence or counterintelligence or foreign intelligence information may be disclosed to certain federal officials in order to assist those officials in carrying out their duties.[6] As will be discussed in more detail below, both provisions define foreign intelligence or counterintelligence by referring to the definition set forth in 50 U.S.C. § 401a, and both provisions define "foreign intelligence information" identically.

As amended, Rule 6(e)(3)(C)(i)(V) permits disclosure by an attorney for the government of information meeting the above-referenced statutory definitions "to any federal law enforcement, intelligence, protective, immigration, national defense, or national security official" so long as the disclosure is made "in order to assist the official receiving that information in the performance of his official duties." Similarly, section 2517 now permits disclosure to the identical list of federal officials as set forth in Rule 6(e)(3)(C)(i)(V), by any investigative or law enforcement officer (who has lawfully received such information) "of the contents of any wire, oral, or electronic communications, or evidence derived therefrom," to the extent the contents of such information meet the statutory definitions. 18 U.S.C. § 2517(6) (Supp. I 2001). Moreover, like Rule 6(e)'s requirement, the disclosure must be made "to assist the official who is to receive that information in the performance of his official duties," and section 2517(6) explicitly provides that "[a]ny federal official who receives information pursuant to this provision may use that information only as necessary in the conduct of that person's official duties subject to any limitations on the unauthorized disclosure of such information." *Id*.

---

[6] Pub. L. No. 107-56, § 203(a)(1), 115 Stat. at 279 (amending Fed. R. Crim. P. 6(e)(3)(C)(i)(V), (e)(3)(C)(iii), (e)(3)(C)(iv)); *id*. § 203(b), 115 Stat. at 280 (amending 18 U.S.C. § 2517(6)). The Patriot Act also added section 403-5d to the United States Code, title 50. *Id*. § 203(d)(1), 115 Stat. at 281. This provision repeats the amendments made to Rule 6(e) and section 2517 in a general section that starts with the phrase "[n]otwithstanding any other provisions of law." *Id*. In light of the specific amendments to Rule 6(e) and section 2517, we do not discuss the significance of this provision here.

Therefore, it is no longer required, as it would have been for disclosures made pursuant to the President's inherent constitutional authority, that the disclosure be necessary to the President's discharge of his constitutional responsibilities. Any information within the statutory categories may be disclosed to "assist" a member of the intelligence community (or other specified officials) with carrying out his duties.

One important distinction between section 2517(6) and Rule 6(e) is that, unlike section 2517(6), Rule 6(e)(3)(C)(iii) has a disclosure reporting requirement that provides that "[w]ithin a reasonable time after such disclosure, an attorney for the government shall file under seal a notice with the court stating the fact that such information was disclosed and the departments, agencies, or entities to which the disclosure was made." The significance of this provision will be discussed in greater detail below.

The information that falls within these statutory exceptions to Rule 6(e) and Title III's confidentiality provisions is "foreign intelligence" or "counter-intelligence," as defined in 50 U.S.C. § 401a (2000 & Supp. I 2001), and "foreign intelligence information," as defined identically in Rule 6(e)(3)(C)(iv) and 18 U.S.C. § 2510(19) (Supp. I 2001). Section 401a(2) of title 50 defines "foreign intelligence" as "information relating to the capabilities, intentions, or activities of foreign governments or elements thereof, foreign organizations, or foreign persons, or international terrorist activities." Section 401a(3) defines "counterintel-ligence" as "information gathered, and activities conducted, to protect against espionage, other intelligence activities, sabotage, or assassinations conducted by or on behalf of foreign governments or elements thereof, foreign organizations, or foreign persons, or international terrorist activities." "[F]oreign intelligence information" is defined as:

(A) information, whether or not concerning a United States person, that relates to the ability of the United States to protect against—

(i) actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power;

(ii) sabotage or international terrorism by a foreign power or an agent of a foreign power; or

(iii) clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power; or

(B) information, whether or not concerning a United States person, with respect to a foreign power or foreign territory that relates to—

(i) the national defense or the security of the United States; or

    (ii) the conduct of the foreign affairs of the United States[.]

18 U.S.C. § 2510(19); *see also* Fed. R. Crim. P. 6(e)(3)(C)(iv). These definitions are quite broad. They encompass a wide array of information relevant to national security and foreign affairs.

## IV. Impact of the Patriot Act Provisions on the Ability to Disclose Information Under Rule 6(e) and Title III

    The Patriot Act amendments to Rule 6(e) and section 2517 have not altered the constitutional analysis set forth in our 1993, 1997 and 2000 opinions. Under the analysis this Office has consistently outlined, information necessary to protect the national security and foreign policy interests of the United States may always be disclosed to the President by an attorney for the government regardless of statutory restrictions, and the President or his delegee may, in turn, use and/or disclose that information to other federal officials as necessary to perform the President's constitutional responsibilities under Article II.

    Certain statutory limitations discussed in those prior opinions, however, have been significantly modified by the Patriot Act. It is now clear, as a statutory matter, that information falling within the statutory definitions of foreign intelligence, counterintelligence, and foreign intelligence information may be disclosed to a variety of officials under appropriate circumstances. In the context of grand jury material, an attorney for the government, and, in the context of Title III information, any investigative or law enforcement officer, or attorney for the Government, may disclose the protected information without a court order to a number of different categories of federal officials.[7] In addition, in contrast to the situation when material is disclosed under Rule 6(e)(3)(A)(ii) (in which case the information may be used only to assist an attorney for the government in criminal law enforcement), the information disclosed to those federal officials under the new Patriot Act provisions is for the use of *those officials* in the performance of *their* official duties. Moreover, under these statutory provisions, information may be disclosed so long as it will "assist the official who is to receive that information

---

[7] This is not to say that the Attorney General may not exercise his supervisory responsibility to require that the decisions to make such disclosures must be approved at the level of the Attorney General, Deputy Attorney General, or Assistant Attorney General. And, in fact, section 203(c) of the Patriot Act provides that "[t]he Attorney General shall establish procedures for the disclosure of information pursuant to section 2517(6) and Rule 6(e)(3)(C)(i)(V) of the Federal Rules of Criminal Procedure that identifies a United States person, as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1801)." 115 Stat. at 280-81 (codified at 18 U.S.C. § 2517 note). The Attorney General has directed that the Assistant Attorney General for Legal Policy draft, for his consideration and promulgation, procedures, guidelines, and regulations to implement section 203 of the Patriot Act. Memorandum for the Deputy Attorney General et al., from the Attorney General, *Re: Coordination of Information Relating to Terrorism* at 5 (Apr. 11, 2002).

in the performance of his official duties." 18 U.S.C. § 2517(6). In the past, if the President's inherent constitutional authority were invoked to authorize such a disclosure, this could be done only if the information were *necessary* to protect the national security or foreign relations of the United States. Thus, the Patriot Act amendments have made it clear that any attorney for the government (and in the case of Title III, any investigative or law enforcement officer as well) may (1) disclose, without the approval of the President, appropriate information to any federal official engaged in the performance of federal law enforcement, intelligence, protective, immigration, national defense, or national security duties; (2) so long as that information will assist that federal official (it does not need to be "necessary"); (3) in the performance of his official duties.

Nor do we believe that Congress's decision to amend Rule 6(e) and Title III with respect to the disclosure of foreign intelligence undermines the validity of our prior constitutional analysis. To begin with, as we have previously explained, we do not believe that Congress may legislate in this context to restrict the President's access to information that is of such importance to national security or foreign affairs that to withhold it from the President would impair the discharge of one of the President's core constitutional responsibilities. *Cf. Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637-38 (1952) (Jackson, J., concurring) (recognizing that President may have authority to "tak[e] measures incompatible with the expressed or implied will of Congress" where core executive powers are at stake). Having said this, however, we also believe that neither the text of the amendments nor the chronology of the enactment of the amendments explicitly or implicitly evidences Congress's disapproval of the exercise of such presidential authority pursuant to a theory of implied exception to the relevant confidentiality provisions. As the Supreme Court has acknowledged:

> Congress cannot anticipate and legislate with regard to every possible action the President may find it necessary to take or every possible situation in which he might act. Such failure of Congress specifically to delegate authority does not, "especially . . . in the areas of foreign policy and national security," imply "congressional disapproval" of action taken by the Executive. On the contrary, the enactment of legislation closely related to the question of the President's authority in a particular case which evinces legislative intent to accord the President broad discretion may be considered to "invite" "measures on independent presidential responsibility."

*Dames & Moore v. Regan*, 453 U.S. 654, 678 (1981) (quoting *Haig v. Agee*, 453 U.S. 280, 291 (1981); *Youngstown*, 343 U.S. at 637). At the time it considered these amendments, Congress was not specifically faced with the issue addressed in our prior opinions, there is no indication in the legislative history of the Patriot Act

that the issued was debated or otherwise discussed and there is nothing in the amendments themselves that is directly inconsistent with our constitutional analysis.

## V. Discussion of Specific Questions

In addition to your Office's inquiry regarding the general effect of the Patriot Act amendments on Rule 6(e) and Title III, your Office also identified more particularized questions regarding operation of these new provisions, which we address below.

### A. Who is Authorized to Make the Decision to Disclose Information to the Appropriate Federal Officials?

#### 1. Statutory Disclosures

As discussed above, with respect to grand jury matters, any attorney for the government who is in possession of grand jury information may disclose that information so long as such information meets the statutory definition and disclosure is made for a proper purpose to an official falling within one of the enumerated categories. An attorney for the government may include, for example, the prosecutor in charge of the investigation, the United States Attorney for the district in which the grand jury is sitting, or other federal officials within the Department of Justice who gain access to the information under Rule 6(e)(3)(A)(i) in the performance of their law enforcement duties (e.g., the Assistant Attorney General of the Criminal Division, the Deputy Attorney General, or the Attorney General).

With respect to Title III information, the disclosure may be initiated by an investigative or law enforcement officer, or attorney for the government, who has obtained knowledge of the information by any means authorized by the provisions of Title III. "Investigative or law enforcement officer" is defined as "any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in [title 18], and any attorney authorized by law to prosecute or participate in the prosecution of such offenses." 18 U.S.C. § 2510(7) (2000).

#### 2. Disclosure Pursuant to Inherent Constitutional Authority

Both the Rule 6(e) and the Title III confidentiality provisions are subject to an implied exception where disclosure of such information to the President is necessary to permit him to discharge his executive responsibilities under Article II. As an initial matter, a decision to disclose such information to the President may be made by the official in possession of the information. While disclosure of the

information is an inherent constitutional power of the President, the President cannot determine that it should be disclosed until he has received it. The same principle underlying the President's inherent authority here—namely, the principle that the President has a right to be provided all information necessary for the performance of his duties—also implies an obligation on officials in the government who possess such information to disclose to the President any information that they determine is necessary for the President to have where to withhold it would impair his ability to perform his constitutional duties and responsibilities. Although such disclosures should be reserved for extraordinary circumstances, the Attorney General or Deputy Attorney General is capable of assessing when the nature of the information requires its disclosure to the President.

As for further disclosures to other officials whom the President deems should have the information to assist the President in the performance of his duties, we conclude that the decision to make such disclosures rests with the President. Because the disclosure is made pursuant to an inherent constitutional authority of the President, we conclude that subordinate officers do not have authority to determine on their own to whom such disclosures should be made. Of course, as will be discussed in greater detail, the President may delegate his authority to make further disclosures of such information to one or more subordinates.

## B. May Information Be Shared with the President, Attorneys in the White House Counsel's Office, the President's Chief of Staff, the National Security Advisor and Officials Within the Department of Defense, and Are There Any Differences in the Standards That Apply for Disclosure to these Different Officials?

### 1. Statutory Exceptions

The Patriot Act amended Rule 6(e)(3) and 18 U.S.C. § 2517 of Title III specifically to provide that matters involving foreign intelligence, counterintelligence, or foreign intelligence information may be disclosed to any federal law enforcement, intelligence, protective, immigration, national defense, or national security official in order to assist the official receiving that information in the performance of his official duties. As an initial matter, the statute does not refer to officials holding specific titles, but to officials who exercise functions related to the broadly enumerated categories. Pub. L. No. 107-56, §203(a)-(b), 115 Stat. at 279-80. There can be no doubt that the President, as the head of the Executive Branch, is such a federal official for purposes of at least a number of the enumerated categories (e.g., national defense and national security), and therefore such information may be disclosed to him pursuant to this exception to Rule 6(e)(2). Similarly, to the extent that the White House Counsel, the President's Chief of Staff, or both, may be the President's designee(s) for receiving such information in assisting the President in the conduct of his "official duties," then he or she is clearly eligible to

receive such information directly from a government attorney. The inquiry as to whether an official falls within the statutory definition is not formalistic, but rather requires an analysis of the role of the federal official and whether his role, even if advisory in nature, includes law enforcement, intelligence, protective, immigration, national defense, or national security functions.[8] At any particular time, such officials as the White House Counsel, the President's Chief of Staff, the National Security Advisor, and various other policy, legal, law enforcement, and military advisors to the President (whether they be principal or inferior officers of the United States or purely advisory) may be performing functions that fall within the various enumerated areas of the statute. There is also no doubt that officials at the Department of Defense perform duties that fall within a number of the statutory categories, such as "intelligence," "national defense," and "national security," and thus are eligible to receive foreign intelligence, counterintelligence and foreign intelligence information that is of assistance to any official within that Department in the performance of such duties.

### 2. Disclosure Pursuant to Inherent Constitutional Authority

As outlined above, this Office has opined that, even though it fell outside the explicit exceptions set forth in the pre-Patriot Act Rule 6(e)(3), grand jury information that is necessary for the performance of the President's national security or foreign relations duties could be disclosed to the President, and, with his approval, to other members of the Intelligence Community. Adoption of the Patriot Act does not affect our prior conclusions. Even if there is grand jury or Title III information that somehow falls outside the type of information defined in Rule 6(e)(3)(C) and section 2517(6), but which is necessary to the President's performance of his constitutional duties, our prior constitutional analysis permits disclosure of such information.[9] As previously explained in our discussion of the first specific question your Office posed, the Attorney General has a duty to make the relevant assessment and disclosure to the President where to withhold the information would impair the ability of the President to discharge his constitutional responsibilities. Similarly, as discussed above, the President may also delegate to the Attorney General and other government officials the authority to disclose such information on his behalf, as appropriate, to other Executive Branch offi-

---

[8] We do not understand the term "official" in these provisions to be coextensive with the term "officer of the United States." A federal "official" is only an "[o]fficer of the United States" to the extent he exercises "significant authority pursuant to the laws of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (quotation marks omitted). Therefore, the statutes, which use the term "official," *see* Fed. R. Crim. P. 6(e)(3)(C)(i)(V) and 18 U.S.C. § 2517(6), include federal officials who do not exercise significant government authority.

[9] In fact, as previously discussed, we have also applied this analysis in the context of providing the President grand jury information relevant to the exercise of his pardon power. *See supra* note 3.

cials.[10] Such a delegation may direct the Attorney General to disclose grand jury or Title III information to other federal officials who need such information in order to assist the President in performing his constitutional functions.

It is also our view, however, that any additional or subsequent disclosures to other officials by someone other than the President must be done pursuant to a presidential directive. We recognize that the situation may arise where the Attorney General is in a meeting with the President and other senior advisers of the President and there will be grand jury or Title III information that is relevant to the discussion. However, permitting the Attorney General to disclose such information to others, beyond the President, outside the parameters of a statutory exception would involve the unauthorized exercise of the President's inherent constitutional authority by the Attorney General. This is not a mere formalism. The Attorney General has the authority to make the initial decision to disclose such information to the President because of the President's unique constitutional position which gives *the President* the right to know that information. However, further disclosures, which are made pursuant to the President's inherent constitutional authority but in tension with statutory limitations, should be made only pursuant to the President's conscious exercise of his power where there is no impediment to the President making that initial assessment himself.

Of course, as previously discussed, the President may delegate his authority, and delegation could take place orally in the course of the meeting. A more efficient procedure, however, might be for the President to delegate his authority more broadly to the Attorney General in the form of a standing directive permitting the Attorney General to determine when it would be appropriate to rely on the President's inherent constitutional authority to share information with other high-ranking members of the Executive Branch. In that way, whenever information was relevant at a cabinet or other meeting, the Attorney General could determine whether it should be disclosed to all those present.

---

[10] Such a directive may be set forth in a formal executive order, in a less formal presidential memorandum (since the matter deals with an internal process), or pursuant to an oral instruction from the President to the Attorney General or other appropriate officials. At various points over time, Presidents have delegated presidential functions both by executive order and by presidential memorandum. *Compare* Delegation of Authority Under Section 1401(b) of the National Defense Authorization Act for Fiscal Year 2000 (Public Law 106-65), 65 Fed. Reg. 3119 (Jan. 20, 2000) *with* Exec. Order No. 10250, 3 C.F.R. 755 (1949-1953) (delegation of functions to the Secretary of the Interior), *reprinted as amended in* 3 U.S.C. § 301 app. (1994). "It has been our consistent view that it is the substance of a presidential determination or directive that is controlling and not whether the document is styled in a particular manner." *Legal Effectiveness of a Presidential Directive, as Compared to an Executive Order*, 24 Op. O.L.C. 29, 29 (2000). Nor is such a directive required to be written in order to have legal effect. *Cf.* Memorandum for the Attorney General, from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, *Re: Legal Authority for Recent Covert Arms Transfers to Iran* at 14 (Dec. 17, 1986) (oral authorization by the President of action inconsistent with an existing executive order creates a valid modification of, or exception to, the executive order).

**C. May Grand Jury and Title III Information Be Shared With the President For Purposes of Making Decisions Regarding Bringing Charges in a Military Tribunal?**

To the extent that the President's advice or approval is needed to determine whether or not to proceed with a criminal prosecution, information necessary to receiving such advice or approval clearly falls within the pre-Patriot Act exceptions set forth in Rule 6(e)(3)(A)(ii) (permitting disclosure of information to government personnel necessary to assist an attorney for the government in the performance of his law enforcement function) and section 2517(2) (permitting a law enforcement officer to share information where necessary to obtain assistance in investigating or prosecuting a crime). Assistance with the decision whether to proceed with an indictment and prosecution goes to the very heart of the Attorney General's law enforcement responsibilities. In addition, information relevant to such a decision may be disclosed under the Patriot Act exceptions. The decision whether to bring charges in a military tribunal in connection with crimes committed against the United States and its citizens by a foreign power or agent falls within the areas of national defense, national security and foreign affairs. The decision to take action against and bring to justice foreign agents who have committed offenses against the United States and its nationals, and the forum within which such enforcement action is taken, may have a significant impact on our nation's security and may also affect our foreign relations. Moreover, given the context of these decisions, to the extent such information falls outside the technical boundaries of the Rule 6(e)(3)(C)(iii) and section 2517(6) provisions, but the President considers the information necessary to his ability to make the decision required of him, then the analysis of our prior opinions regarding the President's right to access information necessary to the performance of his Article II responsibilities governs disclosure of such information.

**D. Does the Reporting Requirement Contained in Rule 6(e)(3)(C)(iii) Apply to the President?**

The Patriot Act amendment to Rule 6(e)(3) also provides that, when any information is disclosed pursuant to this provision, a notice must be filed under seal with the court (by an attorney for the government) stating "the fact that such information was disclosed and the departments, agencies, or entities to which the disclosure was made." Fed. R. Crim. P. 6(e)(3)(C)(iii). As an initial matter, we construe this language as requiring disclosure only of "the fact" that foreign intelligence or foreign intelligence information has been disclosed, and not the content of such information. Such a plain meaning reading of the statute is further supported by the cardinal principle of statutory interpretation that, when an act of Congress raises a serious doubt as to its constitutionality, the courts will first determine whether a construction of the statute is fairly possible by which the

question may be avoided. *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001); *Crowell v. Benson*, 285 U.S. 22, 62 (1932). The President has an absolute executive privilege to protect against the disclosure of certain communications, including those made by other officials within the Executive Branch, involving military, diplomatic, or national security secrets, and therefore a construction of the statute should be avoided that would interpret it as requiring an attorney for the government to disclose to a court the content of information communicated to the President that so clearly falls within those categories. *See Confidentiality of the Attorney General's Communications in Counseling the President*, 6 Op. O.L.C. 481, 482 & n.3 (1982); *United States v. Nixon*, 418 U.S. 683, 710-11 (1974); *United States v. Reynolds*, 345 U.S. 1, 10 (1953); *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948).

Your Office has also asked us whether the disclosure notice requirement of Rule 6(e)(3)(C)(iii) even applies in the first place to disclosures made to the President, and, if so, whether such a requirement is constitutional. The plain language of the notice provision does not, by its terms, include the President. It refers only to "departments, agencies, or entities," none of which describes the President. It could be argued that the President holds his office within an *entity* called the Office of the President, and that the court should be notified that a disclosure was made to the "Office of the President." We do not think that such a reading is persuasive. The failure of this provision explicitly to include the President leads to the conclusion that it was not intended to apply to him. A well-settled principle of statutory construction, known as the "clear-statement rule," provides that statutes that do not expressly apply to the President must be construed as not applying to the President if such application would involve a possible conflict with the President's constitutional prerogatives. *See, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992); *see also Application of 28 U.S.C. § 458 to Presidential Appointments of Federal Judges*, 19 Op. O.L.C. 350, 351-57 (1995); Memorandum for Egil Krogh, Staff Assistant to the Counsel to the President, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Closing of Government Offices in Memory of Former President Eisenhower* at 3 (Apr. 1, 1969). Inclusion of the President in the reporting requirement could infringe on the presumptively confidential nature of presidential communications by requiring disclosure to a court of the fact that confidential foreign intelligence or foreign intelligence information from a particular grand jury investigation had recently been disclosed to the President. As we have explained in past opinions, the necessity for confidentiality in the Executive Branch communications with the President is "premised on the need to discuss confidential matters which arise within the Executive Branch and to assist the President in the discharge of his constitutional powers and duties, by ensuring discussion that is free-flowing and frank, unencumbered by fear of disclosure or intrusion by the public or the other branches of government." *Confidentiality of the*

*Attorney General's Communications in Counseling the President*, 6 Op. O.L.C. at 485. The mere disclosure of the fact that sensitive information of a particular type, elicited by a particular grand jury in the course of a specific investigation, has been disclosed to, and presumably discussed with, the President clearly falls within the scope of executive privilege. Absent a clear expression, therefore, it should not be assumed that Congress intended to require disclosure of such an occurrence.

If the disclosure is made to the President and to others simultaneously, such as in a presidential meeting, a slightly different analysis applies. The analysis outlined above demonstrates that the reporting requirement does not apply to a disclosure made to the President given his unique status and the presumption against reading a statute or rule in way that would raise constitutional concerns by interfering with the President's constitutional prerogatives. The same considerations generally do not warrant construing the reporting requirement so as not to apply to disclosures made to *other* officials in the Executive Branch. Therefore, where such a simultaneous disclosure to the President and others occurs, the disclosures to those other than the President must generally be reported. Our conclusion on this point is supported by the nature of the report that is required. Because the report must specify only the "departments, agencies, or entities to which the disclosure was made" (e.g., the Department of Defense if the Secretary of Defense receives the information at the presidential meeting), none of the exact circumstances of the meeting, or the fact that it was a presidential meeting, needs be revealed. Fed. R. Crim. P. 6(e)(3)(C)(iii). A special case is presented by disclosure to some persons within the Executive Office of the President. For example, if disclosure is made during a meeting in which the President's Chief of Staff, the Vice President or the Counsel to the President is present, a report indicating that a disclosure was made to "the Office of the President" or to the "Office of Counsel to the President" would effectively disclose that the matter was a subject of presidential consideration. The same considerations outlined above dictating that the reporting requirement should be construed not to apply to disclosures to the President himself also dictate that the requirement should not apply to disclosures made to the President's close advisers within the Executive Office of the President where reporting such disclosure will effectively reveal that the matter has been brought to the President's attention.[11]

---

[11] Thus, we conclude that the reporting requirement would not apply to a disclosure made to the President's Chief of Staff or to the Counsel to the President (or members of the Counsel's office). It could be argued that the role of *all* senior personnel within the Executive Office of the President ("EOP") is to advise or assist the President and thus that reporting *any* disclosure to a senior official within the EOP might effectively reveal a communication to the President. We conclude, however, that such an argument would cut too broadly. Given the extensive size of some of the entities within the EOP and the roles that they play in day-to-day coordination of the Executive Branch (roles that are performed without any actual contact or communication with the President), we think it is not in keeping with the practical realities of the functions of these entities to argue that any revelation that information has been disclosed to them will effectively disclose a communication to the President.

We note that even though the reporting requirement would *apply* to disclosures made to officials other than the President, we do not believe that it could properly override an assertion of executive privilege with respect to such disclosures made on an "as-applied" basis, where, in the context of the particular investigation and the nature of the grand jury information, the fact of the disclosure (or the identity of the entity to which disclosure was made) was determined to warrant confidentiality protection. The assertion of privilege would need to be reported to the court in lieu of reporting the disclosure.

Yet a different situation is presented if information is first disclosed to the President and the President subsequently further discloses it to other officials. We conclude that such subsequent, derivative disclosures are not subject to the reporting requirement in Rule 6(e)(3)(C)(iii). The reporting requirement set forth in paragraph (3)(C)(iii) applies only to a disclosure made pursuant to paragraph (3)(C)(i)(V)—that is, a disclosure of grand jury information that is foreign intelligence or counterintelligence or foreign intelligence information to an official "to assist the official receiving that information in the performance of his official duties." Nothing in the phrasing of the reporting obligation suggests that it applies to *subsequent* dissemination of the information made by such an official in the course of pursuing his duties. To the contrary, because the rule expressly anticipates disclosure "to assist the official receiving that information in the performance of his official duties," it seems to contemplate that use of the information (and hence further dissemination) will be made. Fed. R. Crim. P. 6(e)(3)(C)(i)(V). That dissemination, however, does not in itself constitute a "disclosure" pursuant to paragraph (3)(C)(i)(V). The "disclosure" is the transfer of the information from the realm of the grand jury to the intelligence, national security, or other official who needs the information to perform his duties. The terms of the reporting requirement confirm this understanding. The rule requires a report to the district court only of the "departments, agencies, or entities to which the disclosure was made." Fed. R. Crim. P. 6(e)(3)(C)(iii). By requiring only such a general report of the agency or department to which the disclosure was made (not the specific officials), the rule appears to contemplate that the officials who first receive the information will need to distribute it further in pursuing their duties. Indeed, in the sentence immediately preceding the reporting requirement, paragraph (3)(C)(iii) makes it explicit that Congress anticipated such further dissemination of the information as it states that officials who have received grand jury information under paragraph (3)(C)(i)(V) may use the information "subject to any limitation on the unauthorized disclosure of such information." Disclosures are thus contemplated and are restricted, not by Rule 6(e) itself, but solely by unspecified "limitations" that must derive from *other* sources of law. If Congress had intended Rule

---

Thus, for example, we believe that the reporting requirement does properly apply to disclosures made to officials at the Office of Management and Budget or the National Security Council.

6(e) itself to regulate that further spread of the information, it surely would have said so more explicitly by at least cross-referencing the Rule 6(e) provision that limits disclosure of the information.

Two aspects of the text and structure of the Rule strongly support this interpretation of the new provision. First, under the plain terms of Rule 6(e), the secrecy requirement does not extend to information disclosed pursuant to new paragraph (3)(C)(i)(V). Paragraph (e)(2) of the Rule lists with great specificity the persons to whom the rule of secrecy applies. It states: "A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules." Where a person to whom a disclosure is made under a specific provision of the rule is intended to be covered, the text makes that explicit (as in the case for disclosures made under paragraph (3)(A)(ii)). By its terms, the rule of secrecy does not extend, however, to those who receive disclosures under paragraph (3)(C)(i)(V). Moreover, paragraph (2) explicitly states that "[n]o obligation of secrecy may be imposed on any person except in accordance with this rule."

Second, the interpretation outlined above is strongly buttressed by the contrast between the wording of this new reporting requirement added by the Patriot Act and the pre-existing reporting requirement for information disclosed to government personnel to assist a government attorney in federal criminal law enforcement pursuant to paragraph (3)(B) of Rule 6(e). Paragraph (3)(B) establishes a much stricter reporting regime. It requires an accounting of each person to whom information is disclosed as it requires an attorney for the government to report to the district court "the names of the persons to whom such disclosure has been made." Moreover, it makes it clear that the information is still subject to Rule 6(e)'s rule of secrecy, and thus that further disclosures must also be reported to the court, as it requires the government attorney to certify that he "has advised [the persons to whom the information was disclosed] of their obligation of secrecy under this rule." Fed. R. Crim. P. 6(e)(3)(B); *see also* Fed. R. Crim. P. 6(e)(2) (stating that the rule of secrecy applies, *inter alia*, to "any person to whom disclosure is made under paragraph (3)(A)(ii)"). That clear statement that the information remains subject to Rule 6(e) stands in sharp contrast to the suggestion in paragraph (3)(C)(iii) that information disclosed pursuant to the new Patriot Act provision may be further disseminated subject only to unspecified "limitations on the unauthorized disclosure of such information." If Congress had intended such "limitations" to be derived from Rule 6(e), it surely would have followed the same pattern used in paragraph (3)(B) and would have made that restriction explicit. In short, when Congress intended to demand a strict accounting of all the persons who received grand jury information and to ensure that Rule 6(e) would continue to regulate subsequent disclosures of such information, it crafted language tailored

to that end. Those requirements were not included, however, in the reporting requirement created by the Patriot Act.

## E. Does the Reporting Requirement Contained in Rule 6(e)(3)(C)(iii) Apply to Secondary Recipients of Information Disclosed Pursuant to Rule 6(e)(3)(C)(i)(V)?

Under the above interpretation of the Rule, none of the restrictions imposed by Rule 6(e) would carry over to secondary recipients of information that was first disclosed pursuant to paragraph (3)(C)(i)(V)—including the limitation imposed by paragraph (3)(C)(i)(V) itself. That paragraph states that information may be disclosed to certain officials "to assist the official receiving that information in the performance of his official duties." Paragraph (3)(C)(iii) reiterates this limitation by expressly providing that an official "to whom information is disclosed pursuant to clause (i)(V) of this subparagraph may use that information only as necessary in the conduct of that person's official duties." Under the interpretation outlined above, because subsequent disclosures of the information in the course of an official's duties are not themselves disclosures "pursuant to clause (i)(V)," the restriction limiting the use of the information to the course of an official's duties would not apply. Here again, comparing the restriction imposed by paragraphs (3)(C)(i)(V) and (3)(C)(iii) with that imposed by paragraph (3)(B) is instructive in showing the limited reach of the new restriction. Where Congress intended Rule 6(e) to regulate every subsequent step in the dissemination of information originally derived from the grand jury, it made it explicit that obligations under 6(e) would carry over and even required, upon each disclosure of the information, that the recipients be "advised . . . of their obligation of secrecy under this rule." Fed. R. Crim. P. 6(e)(3)(B). There is no comparable provision requiring recipients of foreign intelligence information under paragraph (3)(C)(i)(V) to warn any persons to whom they disclose the information in the course of their duties that those recipients are also under an obligation imposed by Rule 6(e). Nor is there any other indication in the text that the Rule was meant to apply in such situations.[12]

This does not mean, of course, that such recipients of information will be free to use the information however they please. It simply means that Rule 6(e) will not provide the governing standard of conduct. Foreign intelligence information

---

[12] There is little or no legislative history shedding light on the reporting requirement and restrictions under the new disclosure provision in paragraph (3)(C)(i)(V). A section-by-section analysis of the Act in the Congressional Record does note that "[r]ecipients may use that information only as necessary for their official duties, and use of the information outside those limits remains subject to applicable penalties, such as . . . contempt penalties under Rule 6(e)." 147 Cong. Rec. 20, 686 (2001). That statement is consistent with the interpretation outlined above, because the *recipient* of the disclosure under (3)(C)(i)(V) is subject to the restrictions of that paragraph and paragraph (3)(C)(iii) and could be held in contempt for using the information other than in the course of his official duties.

disclosed under the Rule will often be classified or classifiable material (and thus will be subject to a full set of restrictions on its disclosure), or may be subject to restrictions under the Privacy Act, or officials who receive it may be limited by general regulations governing their use of information that they learn in the course of performing their duties. The text of Rule 6(e)(3)(C)(iii) acknowledges that such *other* limitations on the dissemination of information will exist as it states that persons to whom the information is disclosed under paragraph (3)(C)(i)(V) may use it in their duties "subject to any limitations on the unauthorized disclosure of such information." Thus, it cannot be suggested that an interpretation under which the terms of Rule 6(e) do not restrict all subsequent recipients of the information creates an irrational gap at odds with the purposes of the Rule by leaving no restrictions whatsoever on the information.

Finally, this understanding of the reporting requirements imposed by paragraph (3)(C)(iii) makes perfect sense given the purpose of the Patriot Act amendments. The objective of the amendments (to Rule 6(e), Title III and other provisions) was to ensure that information with potential value to law enforcement, intelligence, and other personnel for purposes of piecing together a picture of a foreign threat to the United States—and particularly of potential value for preventing an attack that could cost thousands of lives—would be readily made available as a matter of course to the agencies and offices that could make use of it. Given that purpose, requiring the government to regulate and report to the district court every subsequent tier of dissemination of information made by "law enforcement, intelligence, protective, immigration, national defense, or national security official[s]" in the course of their myriad duties would hamper the free flow of vital intelligence information that the provision was designed to promote. Fed. R. Crim. P. 6(e)(3)(C)(i)(V).

As a result, we conclude that after a disclosure is made under Rule 6(e)(3)(C)(i)(V), subsequent dissemination of that information by the officials to whom it was initially disclosed is not subject to the reporting requirement of paragraph (3)(C)(iii). This understanding applies even where the initial disclosure was made to the President himself and was therefore exempt from the reporting requirement.[13]

---

[13] We do not believe that this interpretation provides a mechanism for a wholesale end run around the reporting requirements of the Rule. The notion that all, or even a significant portion, of Rule 6(e) information could be passed to other federal officials by running it first through the President is unrealistic. Given the enormous demands on the President, realistically he will only be burdened with information that it is necessary for him to have. It is also important to note that disclosures of grand jury material to other officials made pursuant to the President's constitutional authority fall outside the reporting requirements of Rule 6(e) because they are made pursuant to a presidential authority under Article II of the Constitution, not pursuant to the terms of Rule 6(e). *See, e.g.*, *Grand Jury Matters*, 17 Op. O.L.C. at 68; *Grand Jury Material*, 21 Op. O.L.C. at 174-75. Of course, as explained above, this constitutional authority may not be invoked merely for routine foreign intelligence information, but

We caution that this interpretation of the newly enacted provisions of Rule 6(e) has not been tested in the courts. The interpretation outlined above is our best understanding of the requirements of the Rule based upon a thorough review and analysis, but we cannot foreclose the possibility that courts in the future might use a different analysis, resulting in different conclusions.

## VI. Conclusion

The Patriot Act amendments to Rule 6(e) and section 2517 of title 18 have provided statutory authority that overlaps with the President's inherent constitutional authority to have access to information that relates to national security and foreign affairs, while lowering the standard necessary to justify such statutorily authorized disclosures. To the extent, however, that there is information critical to the ability of the President to carry out his Article II duties that continues to fall outside the scope of these new exceptions, our prior discussions regarding the constitutional principles justifying such disclosures continue to apply.

JAY S. BYBEE
*Assistant Attorney General*
*Office of Legal Counsel*

---

rather only for information that is actually necessary for the President to discharge his constitutional duties.